UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GERALD ANGELO BARCELLA,

        Petitioner,

v.

TEREMA CARLIN,

        Respondent.

Case No. 3:10–cv-00048-CWD

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Respondent's Motion for Partial Summary Dismissal, which is now fully briefed. (Dkts. 20, 24, 26.) Both parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 18.)

Having reviewed the record, including the state court record, the Court finds the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order, granting in part and denying in part the Motion for Partial Summary Dismissal.

# FACTUAL BACKGROUND

The Idaho Court of Appeals set forth the factual background of this case in *State v. Barcella*, 16 P.3d 288 (Idaho Ct. App. 2000):

> The state's evidence at trial set forth the following fact scenario: On the evening of April 2, 1995, Barcella told Kenneth Thrift—his drinking buddy for the evening, Virginia Smeltzer—the bartender at the Watering Hole bar in Coeur d'Alene, and Brad Bakie that he intended to kill Smith, the elderly manager of the Harmony House apartments where Barcella resided.

> Returning to Barcella's room at the Harmony House apartments after the Watering Hole closed, Barcella and Thrift noisily entered the building and went into Barcella's one-room apartment, across the hall from Smith's room. There, they continued to drink accompanied by the noise of the radio and television. Smith, through the door, told Barcella to turn the volume down. Barcella begrudgingly complied. Some time later, while Thrift returned to his room next door to get some cigarettes and more beer, Barcella entered Smith's room and bludgeoned him in the head with a pulaski [axe].When Thrift came back, about five minutes later, Barcella was at Smith's door, across the hall, wiping off the doorknob with his bandana.

> Back in Barcella's room, Barcella told Thrift that he had killed Smith. The two continued drinking beer until about 4:30 a.m. and then left to get breakfast at Denny's Restaurant. From there, Barcella called his girlfriend Rikki Bobo. He told her to get over to Denny's and that he had killed Smith. Once she arrived, Barcella again told Bobo and Thrift that he killed Smith by striking him in the head three times with a pick ax.

> After visiting with Barcella and Thrift at Denny's for nearly an hour, Bobo returned to Barcella's room at Harmony House. There, she noticed that Barcella's pulaski was not in his room. When Barcella arrived, Bobo, with Barcella's approval, wrote out a note addressed to Smith requesting a receipt for Barcella's rent payment. Barcella told her that the note was a good idea because it would make the police believe that Barcella thought Smith was still alive. Bobo slipped the note under Smith's door.

> Later that afternoon, Peter Cooper, the owner of the Harmony House apartments, discovered Smith's body. Smith had several large head wounds

and smaller wounds in his chest. A pulaski was found under a piece of carpet stuffed under Smith's bed. During the homicide investigation, officers discovered that Barcella, a convicted felon, possessed firearms in his room. While in jail on a charge of being a felon in possession of a firearm, Barcella was charged with first degree murder for the killing of Smith, I.C. §§ 18–4001 — 18–4003.

At the preliminary hearing, Robert Agrifolio,[1] a convicted defendant in an unrelated burglary case, testified that in September of 1995 he occupied a jail cell adjacent to Barcella's cell in the Latah County Jail. After identifying Barcella, Agrifolio testified that, while in the jail's recreation yard, Barcella told him he hit Smith in the head with an ax because he believed Smith had killed his puppy. Agrifolio was cross-examined extensively about his prior convictions, his conversations with Barcella, and his reason for testifying. Agrifolio testified that he was under subpoena and denied being a jailhouse snitch or getting any benefit from testifying against Barcella.

Barcella was bound over to district court for trial on the charge of murder in the first degree. At trial, the state called twenty-two witnesses including investigating officers, medical experts, the Watering Hole bartender, the apartment owner, several apartment residents, Bobo, Thrift and two jailhouse informants—Agrifolio and George Lane.

Before calling Thrift, the state attempted to preclude impeachment through Thrift's prior criminal convictions. In part, Barcella sought to impeach Thrift by introducing evidence of his criminal history, arguing that Thrift is per se untruthful because honest people do not get arrested ninety-four times, forty-two of which were for felonies. The trial court ruled that Thrift's only felony convictions in the last ten years were two DUIs, not crimes relevant to truth and veracity under I.R.E. 609. Thrift testified that Barcella owned a pulaski when he moved into the Harmony House apartments, that Barcella had several times threatened to kill Smith, and that he had seen Barcella wiping off Smith's doorknob with a bandana when Thrift came out of his room with more beer. Thrift also stated that Barcella admitted to killing Smith once he and Thrift returned to Barcella's room to drink more beer and, again, after he and Thrift arrived at Denny's Restaurant for breakfast early the next morning.

---

[1] "Agrifolio" should be "Agrifoglio." (See State's Lodging A-6, p. 1363.)

Bobo also testified that Barcella owned a pulaski when he moved into the Harmony House apartments. She further testified to Barcella's admissions to killing Smith and acknowledged that she had written a note about rent payment that was slipped under Smith's door to prevent police attention from focusing on Barcella. After challenging Bobo's credibility by questioning her about a plea deal on a recent DUI charge and the state's grant of immunity regarding her writing the rent payment note, Barcella also sought to inquire about her status as a jail inmate and why she was allowed to testify in civilian clothing and makeup. The court sustained the state's objection to this line of inquiry.

The state then attempted to call Agrifolio as its next witness; however, the bailiff reported that Agrifolio had told the jailers that he refused to testify. Agrifolio was brought into court from the jail and questioned. After he indicated that he did not want to testify, the court appointed counsel for Agrifolio so that he could obtain legal advice before finally deciding whether or not to testify. A day later, Agrifolio's counsel informed the court that Agrifolio would not testify. The district court determined that Agrifolio was unavailable. Four days later, the court, over Barcella's objection, permitted Agrifolio's preliminary hearing testimony to be read into the record.

The state's twentieth witness, Lane, also a jailhouse witness, testified that Barcella had admitted to killing his apartment manager by hitting him in the back of the head because the manager was nagging him about making too much noise. Lane testified that Barcella said a witness, his drinking buddy, had seen him come out of the manager's apartment on the night of the murder. Lane testified that Barcella was not worried about being prosecuted because in the past he had shot a couple of people and was never convicted. Barcella immediately objected and moved for a mistrial on the grounds that the state has elicited testimony about prior bad acts in violation of I.R.E. 404. The district court denied the motion for a mistrial and instructed the jury to disregard Lane's last statement.

Barcella also sought a mistrial on the ground that the state made a late disclosure of the first twenty-seven pages of the transcript of Bobo's statement to the police. The court denied the motion, suggesting Barcella could avoid any prejudice caused by late disclosure by recalling Bobo as a witness. Barcella declined to do so.

The trial court denied Barcella's motion for a judgment of acquittal made at the close of the state's case. During Barcella's case-in-chief, Barcella did not testify. After presenting several character witnesses in defense, Barcella sought to introduce testimony from Kootenai County Public Defender's Office Investigator Mark Durant. Durant was to testify that Agrifolio had recently made several unsolicited telephone calls to him, stating that he—Agrifolio—had been pressured into testifying at the preliminary hearing and, that when asked if his preliminary hearing testimony had been truthful, Agrifolio had said he would "take the Fifth Amendment on that." The state objected and the court, without explanation, disallowed Durant's testimony.

16 P.3d at 291-93 (State's Lodging B-4, pp. 1-4.)

## PROCEDURAL BACKGROUND

Petitioner included nine claims in his Amended Petition for Writ of Habeas Corpus. (Dkt. 9.) The Court previously dismissed Claims (8), (9), and (10) for failure to state a claim upon which relief can be granted. (Dkt. 13.) Petitioner's remaining claims are as follows:

(1)     He was denied the Sixth Amendment right to testify at trial;

(2)     His trial counsel was ineffective for failing to adequately communicate with him;

(3)     He was deprived of his Fifth, Sixth, and Fourteenth Amendment rights to confront and adequately cross-examine three of the State's witnesses;

(4)     His Sixth and Fourteenth Amendment rights were violated when a state trial witness blurted out that Petitioner had committed two prior killings, and the trial court denied a motion for a mistrial;

(5)     His Sixth and Fourteenth Amendment rights were violated when the state did not disclose until trial a transcript of a police interview with a state's witness;

(6)      His Sixth and Fourteenth Amendment rights were violated when the trial court denied his post-trial motion for a new trial;

(7)      His Sixth and Fourteenth Amendment rights were violated when the trial court imposed an excessive sentence; and

(11)     The cumulative effect of the evidentiary errors at trial violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.

## MOTION FOR PARTIAL SUMMARY DISMISSAL

In the Motion for Partial Summary Dismissal, Respondent asserts that Claims (2), (4), (6), and (7) are procedurally defaulted. The Court now reviews each of these claims.

## 1.     Standard of Law

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court may also take judicial notice of relevant state court records in determining whether to dismiss a petition. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Where appropriate, a respondent is permitted to file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state

courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847.

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, or the right to a fair trial, without more, are insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). In *Duncan v. Henry*, the United States Supreme Court clarified that state appellate courts must not be left to guess whether a petitioner is presenting a constitutional issue:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

513 U.S. at 356-66.

The United States Court of Appeals for the Ninth Circuit has recognized at least four different ways to properly present a federal claim in state court. The first is to "explicitly" reference specific provisions of the federal Constitution or federal statutes. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001). Proper exhaustion in this manner "demands more than drive-by citation,

detached from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).

The second way to properly present a federal issue in a state court appellate brief is to cite to federal case law that directly supports one's claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001) (emphasis omitted). The "citation of irrelevant federal cases does not provide a state court with a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Castillo v. McFadden*, 399 F.3d 993, 1001 (9th Cir. 2005).

The third way is to cite "state cases involving the legal standard for a federal constitutional violation," rather than to cite a specific constitutional provision. *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). To satisfy the exhaustion requirement, the state cases cited must "engage[] in a federal constitutional analysis." *Fields v. Waddington*, 401 F. 3d 1018, 1021 ( 9th Cir. 2005).

A fourth way to accomplish proper exhaustion is to "refer[] to a state constitutional right when the contours of the federal and state constitutional rights are identical." *Sanders v. Ryder*, 342 F.3d 991, 1000-01 (9th Cir. 2003). Where the state courts have held that the right under the state constitution is coextensive with the federal constitutional right, and have analyzed both types of claims under federal standards, the federal aspect of the claim is considered properly presented to the state courts, so long as there is nothing in the briefing suggesting that the petitioner meant to allege "specifically," "consistently," and "exclusively" a violation of his state constitutional

right. *Sanders*, 342 F.3d at 999 (citing *Peterson v. Lampert*, 319 F.3d 1153, 1157 (9th Cir. 2003) (*en banc*)).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a federal claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To be an "adequate" state ground, a state court's procedural bar must be one that is "'clear, consistently applied, and well-established' at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is "independent" of federal law if it does not rest on federal grounds and is not intertwined with federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

**2.      Claim (2)**

Claim (2) is that Petitioner's trial counsel was ineffective for failing to adequately communicate with him. Petitioner presented this claim in his initial post-conviction

petition. (State's Lodging C-3, pp. 784-86.) However, he did not include this claim in his appellate brief at the next stage of proceedings, and the Idaho Court of Appeals did not discuss the claim in its opinion. (State's Lodgings D-1, D-5.) Neither was the claim presented to the Idaho Supreme Court. (State's Lodgings D-6, D-7.) Petitioner does not contest Respondent's assessment that this claim is procedurally defaulted. (Dkt. 24.)

### 3.     Claim (4)—Fourteenth Amendment

Claim (4) is that Petitioner's Fourteenth Amendment rights were violated when State's witness George Lane blurted out in front of the jury that Petitioner had committed two prior killings, Petitioner objected, and the state district court refused to grant a mistrial. Instead, the trial court admonished the jury to disregard the statement and gave a formal jury instruction that the statement must be disregarded.

The threshold issue regarding this mistrial claim is whether the claim was exhausted when Petitioner failed to specifically mention the Fourteenth Amendment, even though he focused his arguments on "due process" and "fair trial" arguments, and corresponding state cases discussing federal due process rights. Respondent argues that, while Petitioner and the Idaho Court of Appeals mentioned "due process" and "fair trial" in passing, the claims rested on state law. Petitioner disagrees.

The Idaho Court of Appeals provided a clear procedural framework for courts to analyze the issue of mistrial presenting a state or federal law question in *State v. Stoddard*, 667 P.2d 272 (Idaho Ct. App. 1983). There, Mr. Stoddard was accused of stealing a car. The keys to the stolen car and a small flashlight were found on Mr.

Stoddard's key ring. A police officer testified that such flashlights are sometimes used to commit burglaries or thefts. After sustaining an objection to that testimony, the trial court denied the defendant's motion for a mistrial and instructed the jury to disregard the officer's statement, calling it a ridiculous statement and telling the jury that the judge's mother-in-law had such a flashlight attached to her keys, and she certainly was not a burglar. *Id*. at 273.

In *Stoddard*, the Court determined that the testimony concerning the flashlight first needed to be reviewed to determine whether it fit either of two constitutional dimensions of a due process claim: (1) whether it violated any basic constitutional right for which prejudice would be presumed, requiring automatic reversal (sometimes called "structural error");[2] or (2) whether it implicated a specific constitutional right for which a specific showing of prejudice could be shown. *Id*. at 274.

*Stoddard* then explained that, second, errors that were not of a constitutional dimension should be reviewed for reversibility under the state harmless error standard,[3]

---

[2] In *State v. Perry*, 245 P.3d 961 (Idaho 2010), the Idaho Supreme Court identified a list of constitutional "structural defects" for which prejudice is presumed, including: "(1) complete denial of counsel *(Gideon v. Wainwright*, 372 U.S. 335(1963)); (2) biased trial judge *(Tumey v. Ohio*, 273 U.S. 510(1927)); (3) racial discrimination in the selection of a grand jury *(Vasquez v. Hillery*, 474 U.S. 254 (1986)); (4) denial of self-representation at trial *(McKaskle v. Wiggins*, 465 U.S. 168(1984)); (5) denial of a public trial *(Waller v. Georgia*, 467 U.S. 39 (1984)); (6) defective reasonable-doubt instruction *(Sullivan v. Louisiana*, 508 U.S. 275 (1993)); and (7) erroneous deprivation of the right to counsel of choice *(U.S. v. Gonzalez–Lopez*, 548 U.S. 140 (2006))." *Id*. at 974-75.

[3] The state harmless error standard was described as "virtually as rigorous as *Chapman*: "An adjudication of guilt will not be reversed upon a showing of error 'if the evidence of the defendant's guilt is satisfactory, that is, such as ordinarily produces moral certainty, or conviction in an unprejudiced mind, and the result would not have been different had the ... [error not occurred].'" *Stoddard*, 667 P.2d at 274 (quoting *State v. Brill*, 21 Idaho 269, 275-76, 121 P. 79,

while errors that arose from a specific constitutional right that was violated should be reviewed for reversibility under the federal harmless error standard (the "harmless beyond a reasonable doubt" standard of *Chapman v. California*, 386 U.S. 18, 24 (1967)). *See Stoddard*, 667 P.2d at 274.

In applying the above analysis to determine whether the evidentiary ruling in the Stoddard trial raised a constitutional issue, the Idaho Court of Appeals reasoned and concluded:

> In the present case, the testimony concerning the flashlight did not violate any basic constitutional right which would require automatic reversal, nor did it implicate any other specific constitutional right. The only specific prejudice claimed by Stoddard is that the jury may have speculated that he had engaged in other burglaries or thefts. However, we note that Stoddard took the stand at trial and admitted, in cross-examination, that he had prior felony convictions for grand larceny and two counts of burglary. Any jury perception of Stoddard as a burglar or a thief would have arisen from that admission regardless of the testimony about the flashlight.
>
> Accordingly, we view this case as one in which no error of constitutional dimension has been asserted. Our task, then, is to determine whether the error was harmless under the traditional test.[4]

667 P.2d at 274.[5]

---

80-81 (1912)).

[4] The traditional state test for harmless error was: "An adjudication of guilt will not be reversed upon a showing of error "if the evidence of the defendant's guilt is satisfactory, that is, such as ordinarily produces moral certainty, or conviction in an unprejudiced mind, and the result would not have been different had the ... [error not occurred]." *Stoddard*, 667 P.2d at 274 (quoting *State v. Brill*, 121 P. 79, 80-81 (1912)).

[5] Petitioner's brief was written in July 1999. As of April 1999, beginning with *State v. Thompson*, 977 P.2d 890, 898 (Idaho 1999), the Idaho appellate courts sporadically began applying the *Chapman*

*Stoddard*, a due process case, did not distinguish between state constitutional error

and federal constitutional error. Six years later, in *Cootz v. State*, 785 P.2d 163 (1989), the

Idaho Supreme Court noted that "the scope of the Idaho due process clause is not

necessarily the same as that of the federal constitution," but it found no grounds to deviate

from the federal constitutional standard of due process from the facts presented in *Cootz*.

*Id*. at 165-66. In due process cases decided after *Cootz*, the Idaho Supreme Court has

interpreted the Idaho Constitution to have the same reach as the Constitution of the

United States. *See State v. Searcy*, 798 P.2d 914, 916-19 (Idaho 1990) (due process does

not require an insanity defense). In *State v. Radford*, 998 P.2d 80 (Idaho March 29, 2000),

the Idaho Supreme Court clarified:

> Although the due process clause of the Idaho Constitution is interpreted independently, this Court considers the rationale used by the United States Supreme Court in deciding Fourteenth Amendment due process cases. Additionally, this Court has applied the United States Supreme Court's standard for interpreting the due process clause of the United States Constitution in other due process cases. Finally, under the facts of the present case, there is no compelling reason to expand the protection of the due process provision of the Idaho Constitution beyond that contemplated in the Fourteenth Amendment with regard to the statements made by Radford to law enforcement officers. Because this is not a situation where we believe the Idaho Constitution provides greater protections than those given in the U.S. Constitution, the same analysis used for determining whether Radford's statements were obtained in violation of the right to due process under the U.S. Constitution will be used to determine whether those statements were obtained in violation of the Idaho Constitution.

---

harmless error standard to all "objected-to error," but a universal change was not articulated clearly in *Thompson*. It was not until *State v. Perry*, 245 P.3d 961, 973 (Idaho 2010), that the change was designated as universally applying to both state and federal harmless error analyses.

998 .2d at 83 (internal citation and punctuation omitted).[6]

In summary, prior to Petitioner's case, the state appellate courts had created a analytical method for evidentiary claims that could implicate constitutional or non-constitutional concerns, and, for habeas corpus analysis, it is important to note that this analysis included a threshold determination of whether a constitutional right was implicated. Non-constitutional claims based on state rules or statutes were subject to a different harmless error standard than constitutional violations. Finally, while the Idaho Supreme Court has reserved the right to interpret the Due Process Clause of the Idaho Constitution differently from the United States Constitution, it has not done so in criminal cases similar to Petitioner's case.

In this matter, to determine whether Petitioner, through counsel, properly exhausted the federal nature of his claims in state court, the Court will review Petitioner's appellate briefing and the reasoning of the Idaho Court of Appeals to determine whether either suggests that Petitioner brought, and/or the state court decided, due process claims on specific, exclusive state evidentiary, state procedural, or state constitutional grounds;

---

[6] The Idaho Supreme Court has maintained the direction they set in *Radford*, recently holding that, when interpreting the Idaho Constitution, Idaho courts should "use federal rules and methodology unless clear precedent or circumstances unique to the state of Idaho or its constitution indicates that Idaho' s constitution provides greater protection than the analogous federal provision." *In re Doe,* 304 P.3d 1202, 1205 n. 2 (Idaho 2013) (citing *CDA Dairy Queen, Inc. v. State Ins. Fund*, 299 P.3d 186, 191 (2013). In fact, if a litigant does not argue that the state due process clause provides greater protection than the federal provision, that issue is deemed waived. *Id*. (citing *State v. Diaz*, 144 Idaho 300, 303, 160 P.3d 739, 742 (2007)).

or whether Petitioner alerted the state courts he was relying on federal constitutional grounds via any of the methods identified by the Ninth Circuit Court of Appeals.

The Court first looks to Petitioner's direct appeal brief to determine whether he presented Claim (4), the mistrial claim, as a state or federal issue. Petitioner's "statement of issues" presented the mistrial claim—designated in the state briefing as 2(a)— only as one of "reversible error." (State's Lodging B-1, p. 4.) However, in the "standard of review" section, Petitioner identified the issue as whether a "constitutional violation occurred at trial." (*Id*., p. 22.) While the particular "constitutional" issue is not identified by amendment number, Petitioner cited to *State v. Shepherd*, 855 P.2d 891 (Idaho Ct. App. 1993), as the basis for a claim that the admission of testimony that is highly prejudicial can amount to a denial of the right to due process and a fair trial. (*Id*., p. 24.) In *Shepherd*, the court concluded that "the state introduced error into the trial and that such error violated Shepherd's constitutional right to a fair trial." 855 P.2d at 895.

In his brief, Petitioner identified the standard of review from *Shepherd*: "Error will be deemed harmless if the appellate court is able to declare, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction," which is the *Chapman* constitutionality standard. 855 P.2d at 895. Petitioner's citation to *Shepherd* included an internal citation to *State v. LePage*, 630 P.2d 674 (Idaho 1981), a case which clearly focused on the State's "unconstitutional" conduct and the *Chapman* standard for "determining whether error of constitutional dimension" was harmless, but which also mentioned both the Idaho and the United States

Constitutions. 630 P.2d at 680. Idaho appellate cases preceding Petitioner's case, such as *Stoddard*, show that the standards for state law harmless error and constitutional harmless error were different; in his brief, Petitioner referenced only the constitutional standard.

Turning to the opinion of the Idaho Court of Appeals, the Court finds that, in the discussion of this mistrial claim, the Court of Appeals relied upon *Shepherd* and *LePage*, both of which focused on constitutional analyses. The Court of Appeals also cited to *Bruton v. United States*, 391 U.S. 123, 135 (1968), for the general principle that "the right to due process does not guarantee a defendant an error-free trial, but a fair one." (State's Lodging B-4, p. 8.) In Petitioner's case, the Idaho Court of Appeals concluded that admission of the "other killings" testimony from George Lane was "plainly improper," but, nevertheless "it was harmless beyond a reasonable doubt," which is the *Chapman* federal standard of law.

Based on the foregoing, this Court concludes there is no doubt that Petitioner was bringing a "constitutional" claim in his briefing. There is nothing to suggest that he intended to bring a claim based exclusively on the Idaho Constitution, or that he was arguing that the Idaho Constitution provided greater protection than the United States Constitution. There is nothing in the Idaho Court of Appeals's opinion suggesting that it was addressing only the Idaho Constitution's due process clause.

To have properly exhausted his claim, Petitioner also had to fairly present the claim to the Idaho Supreme Court in a way that the court could recognize the federal nature of the claim. The petition for review begins the standard of law section for the

mistrial claims with a statement of what Petitioner would like the Idaho Supreme Court to review: "The determination of whether a constitutional violation occurred at trial is a matter of law over which the Court will exercise free review." (State's Lodging B-6, p. 25.) After discussing Idaho Criminal Rule 29.1, governing mistrials, Petitioner immediately pointed to the two-prong test in *Shepard* to show that the analysis of Petitioner's state evidentiary issue had constitutional depth. The second prong of *Shepard* requires a determination of reversible error, which itself requires a determination of whether the error was of a constitutional dimension, and, if so, whether it was structural error requiring automatic reversal, or a specific constitutional error with a showing of prejudice that requires a federal harmless error analysis.

Petitioner's lack of citation to the United States Constitution in the body of his brief is similar to the Idaho Court of Appeals's treatment of the same issue in the body of its opinion in one of the state cases Petitioner cited in his petition for review, *State v. Guinn*, 752 P.2d 632 (Idaho Ct. App. 1988). *Guinn* does not mention the United States Constitution or even the phrase "due process," but it does cite to *State v. Urquhart*, 665 P.2d 1102 (Ct. App. 1983), which discusses federal constitutional analysis of the Fourteenth Amendment Due Process Clause. *Urquhart* recognizes (as Petitioner does in his petition for review):

> [W]e believe the phrase "abuse of discretion" inadequately describes the focus of appellate review when a mistrial has been denied in a criminal case. The power to declare a mistrial is the power to avert the consequences of an event at trial that might otherwise deprive the defendant of a fair trial

> and lead to reversal of a conviction. The exercise of this power has a constitutional dimension which goes beyond mere discretion.
>
> * * *
>
> We take our bearings from the United States Supreme Court's decision in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

665 P.2d at 1105. (See State's Lodging B-6, pp. 25-26.) Petitioner, likewise, called for a "constitutional" review and applied *Chapman* to his own facts in his petition for review.

This Court assumes that, in November 2000, the Idaho Supreme Court was familiar with its own traditional analytical method, and that when it saw the terms "constitutional" and "harmless beyond a reasonable doubt," rather than the state "traditional" harmless error standard, and it saw citations to state cases using the *Chapman* harmless error standard to analyze due process issues, it recognized that a constitutional claim based on a state evidentiary ruling was being asserted. Further, Petitioner's main point in the petition for review was that the Idaho Court of Appeals erred in finding the error was harmless beyond a reasonable doubt—which was, at that time, the constitutional, but not the state law, standard for reviewing evidentiary trial errors.

The petition for review nowhere suggests that Petitioner was presenting an exclusive Idaho constitutional due process issue, or that he was arguing that the Due Process Clause of the Idaho Constitution had a broader or different meaning than the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The history of treatment of "reversible error" claims in Idaho demonstrates that two levels of analysis must be performed: whether the claim based in state evidentiary law rose to the

level of a federal constitutional violation, and, if so, whether that federal constitutional violation resulted in presumed prejudice or harmful or harmless error. A variation in the analysis in Idaho case law has occurred only when a petitioner has argued that the Idaho Constitution provided additional due process protections, something not argued in Petitioner's case.

In summary, it is true that a federal habeas court cannot base a determination of whether a defendant's federal due process rights were violated simply on whether state evidentiary rules were violated, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *See Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983). Rather, state court evidentiary rulings regarding the admission of evidence are cognizable in habeas corpus only to the extent they (1) violate specific constitutional provisions, or (2) are so egregious as to render the entire trial fundamentally unfair and thereby violate due process under the Fourteenth Amendment. *Estelle v. McGuire*, 502 U.S. 62 (1991); *see Stoddard*, 667 P.2d at 274. The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). Particularly, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Id.*

The federal and state cases discussed above recognize that claims implicating federal due process rights initially spring from state evidentiary rulings. The rarity of the

*application* of the Constitution's due process provisions does not prevent convicted felons from *contending* that their evidentiary rulings amount to federal due process violations on the "front end"; rather, the narrow rule forecloses relief on the "back end" in all but the most egregious instances of erroneous evidentiary rulings—either because the error does not rise to the level of a constitutional violation or the constitutional violation amounts to harmless error.

The Court rejects Respondent's argument that, because the state appellate court must address the threshold state law evidentiary issues before it addresses any constitutional issues, the claims are based only upon state law. Although state procedural rules and case law set forth various harmless error standards, the United States Supreme Court effectively pre-empted those lesser standards for purposes of errors of constitutional dimension in *Chapman*. The Court stated: "[W]e cannot leave to the States the formulation of the authoritative laws, rules, and remedies designed to protect people from infractions by the States of federally guaranteed rights.... [Absent] appropriate congressional action, it is our responsibility to protect [constitutional rights] by fashioning the necessary rule." *Chapman*, 386 U.S. at 21 (quoted in *State v. Perry*, 245 P.3d at 973).

The Court further rejects Respondent's argument that the mistrial claim is based upon the Idaho Constitution, because, to make such an argument in Idaho, one must specifically address how state due process rights exceed the scope of federal due process rights.

Because Petitioner centered the content of his claims on the federal due process right to be free from having unduly prejudicial evidence admitted that deprives one of a fair trial, and he cited state case law centering on federal due process analysis and ultimately relying on federal harmless error analysis, this Court concludes that Petitioner fairly presented his federal due process claim to the state courts, even if he did not refer to the Fourteenth Amendment in the body of his brief and petition. This conclusion requires the federal court to see the claims as the Idaho Supreme Court sees them, and not to view them from the vantagepoint of an outsider who is unfamiliar with how due process/fair trial claims are presented and addressed in the Idaho courts. This Court concludes that Claim (4) is not procedurally defaulted as a Fourteenth Amendment claim that admission of highly prejudicial testimony amounted to a denial of the right to due process and a fair trial that required declaration of a mistrial.

### 4.    Claim (4)—Sixth Amendment

Petitioner's alternative federal legal basis for Claim (4) is the Sixth Amendment. In an introduction in his state direct appeal brief, Petitioner referenced the Sixth Amendment right to confront witnesses as the basis for a claim that he was not permitted to inquire into the bias and motivation of witnesses, and he included the name of witness *George Lane*. (B-1, p. 33.) However, this appears to have been a mistake, because the argument in the body of the brief discussed witness *Kenneth Agrifoglio*. (Id., p. 43.) The same mistake occurred in the Petition for Review. (B-6, pp. 37, 48.) Petitioner never brought a

Sixth Amendment claim as to witness George Lane. Therefore, this claim is procedurally defaulted.

**5.    Claim (6)**

Claim (6) is that the state district court violated Petitioner's Sixth and Fourteenth Amendment rights when it refused to grant Petitioner's post-trial motion for a new trial based on the factual grounds listed in Claim (3) (inadequate cross-examination of Witnesses Agrifolio, Bobo, and Thrift), Claim (4) (Lane's "two prior killings" testimony) and Claim (5) (State's failure to disclose 27 pages of prior witness Bobo's interview).

This claim was designated Claim 3 in Petitioner's direct appeal brief. The statement of issues and introductory sections of Claim 3 in Petitioner's brief specifically identified this due process claim as one arising under the Fourteenth Amendment. (State's Lodging B-1, pp. 4, 45.) Petitioner relied on *Kyles v. Whitley*, 514 U.S. 419 (1995), to argue that the withholding of the Bobo interview transcript entitled Petitioner to a new trial because "the net effect of the evidence withheld by the state raises a reasonable probability that its disclosure would have produced a different result." *Id*. at 422. (*Id*., p. 49.) Petitioner ended his argument with his assertion that "the cumulative nature of all of these errors, when considered as a whole, are of such magnitude as to have deprived [Petitioner] of a fair trial in violation of his right to Due Process as guaranteed by the Fourteenth Amendment of the United States Constitution." (*Id*., pp. 49-50.) The Fourteenth Amendment arguments were presented explicitly in the petition for review. (State's Lodging B-6, pp 9, 49, 53-54.)

The state court record reflects that Petitioner asked the two state appellate courts to determine whether his Fourteenth Amendment right to due process was violated by the failure to grant a new trial based on the cumulative effect of the three errors. While Petitioner's Sixth Amendments claims regarding inadequate cross-examination of Witnesses Agrifoglio, Bobo, and Thrift were embedded in the Fourteenth Amendment claim, the cumulative error claim presented to the state appellate courts was based on the Fourteenth Amendment, and Petitioner may pursue this claim only in that same manner here, and not under the Sixth Amendment.

**6.      Claim (7)**

Claim (7) is that Petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court imposed an excessive sentence. Respondent argues that no federal basis for this claim was presented to the state courts. The record supports Respondent's argument (State's Lodging B-1, pp. 50-55), and Petitioner does not disagree. Therefore, this claim is procedurally defaulted.

**7.      Cause and Prejudice**

Claims (2) and (7) are procedurally defaulted, as are the Sixth Amendment portions of Claims (4) and (6). If a claim is procedurally defaulted, a federal district court can still hear the merits of the claim if a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default, *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991), or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal

court.[7] *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

As to the "cause" prong, an allegation of ineffective assistance of counsel will serve as cause to excuse the default of other claims *only* if the ineffective assistance of counsel claim is itself not procedurally defaulted, or if it is defaulted, Petitioner can show cause and prejudice for that default. *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000). However, a petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during the postconviction proceedings cannot serve as a basis for cause to excuse Petitioner's procedural default of other claims. *See Coleman*, 501 U.S. at 752.

---

[7] Petitioner does not claim that he is actually innocent of the possession with intent conviction. Rather, he argues that he did not commit the traffic violation that led to the search of his car. Thus, the Court will address only the cause and prejudice exception.

**MEMORANDUM DECISION AND ORDER - 24**

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), established a limited exception to this general rule. That case held that inadequate assistance of post-conviction review (PCR) counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. In *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit extended *Martinez*, holding that it may also apply to underlying claims of ineffective assistance of *appellate* counsel.

The *Martinez* exception[8] applies only to the ineffectiveness of PCR counsel in the initial post-conviction review proceeding. It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Id*. at 1320. Rather, *Martinez* is singularly concerned that, if ineffective assistance of trial counsel claims were not brought in the collateral proceeding which provided the first occasion to raise such claims, the effect was that the claims could not be brought *at all. Id.* at 1316. Therefore, a petitioner may not use as cause attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 1320.

_____

[8] *Martinez* applies only if the ineffective assistance of counsel claim is exhausted (no further avenue of state court relief is available) and procedurally defaulted (an adequate and independent state procedural ground for the default exists). If the new claim is unexhausted and not procedurally defaulted, then the petitioner may be able to return to state court to assert the claim under the stay-and-abey procedure. *See Rhines v. Weber*, 544 U.S. 269 (2005).

A.    Traditional, or *Coleman*, Cause

Petitioner has not raised any traditional cause arguments under *Coleman*. No traditional cause arguments were apparent to the Court in its review of the record.

B.    *Martinez* Cause

The only claim in the Petition to which *Martinez* might apply is Claim (2), which is a claim that his trial counsel was ineffective for failing to adequately communicate with him. Petitioner does not raise a cause argument under *Martinez*. However, the Court will permit Petitioner to attempt to do so in the next round of proceedings.

**8.    Conclusion**

Claims (2) and (7) are procedurally defaulted, as are the Sixth Amendment portions of Claims (4) and (6). These claims will be dismissed, with the exception of Claim (2), pending a submission by Petitioner that *Martinez v. Ryan* should be applied to excuse its procedural default. This case will now proceed to consideration of the merits of the remaining claims: (3), (4) (Fourteenth Amendment due process grounds only), (5), (6) (Fourteenth Amendment due process grounds only), and (11).

## ORDER

**IT IS ORDERED:**

1.    Respondents' Motion for Partial Summary Dismissal (Dkt. 20) is GRANTED in part, and DENIED in part. Claims (2) and (7) are procedurally defaulted, as are the Sixth Amendment portions of Claims (4) and (6). Claims (7) and the Sixth Amendment portions of Claims (4) and (6)

will be dismissed with prejudice. Claim (2) will not be dismissed at this time, pending any submission by Petitioner that *Martinez v. Ryan* should be applied to excuse its procedural default. This case will now proceed to consideration of the merits of the remaining claims: (3), (4) (Fourteenth Amendment due process grounds only), (5), (6) (Fourteenth Amendment due process grounds only), and (11).

2.  Petitioner's Motion for Extension of Time to Respond to Motion to Dismiss (Dkt. 23) is GRANTED, and the Response (Dkt. 24) is considered timely.

3.  Petitioner's Motion to Supplement Response (Dkt. 25) is DENIED, as Petitioner's response and the record were sufficient upon which to determine the procedural default issues. If Petitioner has any cause and prejudice arguments, either traditional *Coleman* or *Martinez* arguments, he may address them in his reply to the Petition for Writ of Habeas Corpus.

4.  Respondent shall file an answer to the remaining claims **within 90 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer. Respondent has the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

5.     No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by this Order or the Local Rules without first obtaining leave of Court.

6.     No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

DATED: September 12, 2014

Honorable Candy W. Dale
United States Magistrate Judge